FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

NOV 13 2007

JAMES W. McCORMACK, CLERK
By: _____
DEP CLERK

UNITED STATES DISTRICT COURT
EASTER DISTRICT OF ARKANSAS
WESTERN DIVISION

NESHAJA HARRIOTT, SANDY HORN,
JACQUI HURLEY, RHONDA MARTIN,
SHANNA NEAL, DEBBIE PERRIGAN,
SHELBY SMITH INDIVIDUALLY and ON BEHALF OF
OTHERS SIMILARLY SITUATED                              PLAINTIFFS

                                                4-07-CV-01104 SWW

v.                          CASE NO.

HEALTHSCOPE BENEFITS, INC.                              DEFENDANTS

This case assigned to District Judge Wright
and to Magistrate Judge _____

COMPLAINT

COME now the Plaintiffs, Neshaja Harriott, Sandy Horn, Jacqui Hurley, Rhonda Martin, Shanna Neal, Debbie Perrigan, and Shelby Smith individually and on behalf of others similarly situated, by and through their attorneys, Hosto & Buchan, P.L.L.C. and Mark Alan Peoples, P.L.C, and for their complaint against the Defendant, HealthSCOPE Benefits, Inc., ("HSB") state and allege:

JURISDICTIONAL STATEMENT

1. Plaintiff Neshaja Harriott is a resident and citizen of Pulaski County, Arkansas. At all times relevant to this complaint, she was employed by the Defendant HSB as a claims analyst. Throughout her HSB employment, she regularly works in excess of forty (40) hours per workweek, but is not properly compensated for overtime hours. She is filing this complaint on behalf of herself and on behalf of all other HSB employees, whether past, present or future, who are classified as claims analysts and/or who hold or held similar positions (irrespective of job title), none of whom where properly compensated for overtime hours.

2. Plaintiff Sandy Horn is a resident and citizen of Pulaski County, Arkansas. At all times relevant to this complaint, she was employed by the Defendant HSB as a claims analyst. Throughout her HSB employment, she regularly works in excess of forty (40) hours per workweek, but is not properly compensated for overtime hours. She is filing this complaint on behalf of herself and on behalf of all other HSB employees, whether past, present or future, who are classified as claims analysts and/or who hold or held similar positions (irrespective of job title), none of whom where properly compensated for overtime hours.

3. Plaintiff Jacqui Hurley is a resident and citizen of Pulaski County, Arkansas. At all times relevant to this complaint, she was employed by the Defendant HSB as a claims analyst. Throughout her HSB employment, she regularly works in excess of forty (40) hours per workweek, but is not properly compensated for overtime hours. She is filing this complaint on behalf of herself and on behalf of all other HSB employees, whether past, present or future, who are classified as claims analysts and/or who hold or held similar positions (irrespective of job title), none of whom where properly compensated for overtime hours.

4. Plaintiff Rhonda Martin is a resident and citizen of Saline County, Arkansas. At all times relevant to this complaint, she was employed by the Defendant HSB as a claims analyst. Throughout her HSB employment, she regularly works in excess of forty (40) hours per workweek, but is not properly compensated for overtime hours. She is filing this complaint on behalf of herself and on behalf of all other HSB employees, whether past, present or future, who are classified as claims analysts and/or who hold or held similar positions (irrespective of job title), none of whom where properly compensated for overtime hours.

5. Plaintiff Shanna Neal is a resident and citizen of Pulaski County, Arkansas. At all times relevant to this complaint, she was employed by the Defendant HSB as a claims analyst. Throughout her HSB employment, she regularly works in excess of forty (40) hours per workweek, but is not properly compensated for overtime hours. She is filing this complaint on behalf of herself and on behalf of all other HSB employees, whether past, present or future, who are classified as claims analysts and/or who hold or held similar positions (irrespective of job title), none of whom where properly compensated for overtime hours.

6. Plaintiff Debbie Perrigan is a resident and citizen of Pulaski County, Arkansas. At all times relevant to this complaint, she was employed by the Defendant HSB as a claims analyst. Throughout her HSB employment, she regularly works in excess of forty (40) hours per workweek, but is not properly compensated for overtime hours. She is filing this complaint on behalf of herself and on behalf of all other HSB employees, whether past, present or future, who are classified as claims analysts and/or who hold or held similar positions (irrespective of job title), none of whom where properly compensated for overtime hours.

7. Plaintiff Shelby Smith is a resident and citizen of Pulaski County, Arkansas. At all times relevant to this complaint, she was employed by the Defendant HSB as a claims analyst. Throughout her HSB employment, she regularly works in excess of forty (40) hours per workweek, but is not properly compensated for overtime hours. She is filing this complaint on behalf of herself and on behalf of all other HSB employees, whether past, present or future, who are classified as claims analysts and/or who hold or held similar positions (irrespective of job title), none of whom where properly compensated for overtime hours.

8. Defendant HSB is a foreign corporation registered to do business in Arkansas. HSB's principle place of business is located in Little Rock, Pulaski County, Arkansas. HSB was the Plaintiffs' employer for all times relevant to this cause. HSB is an employer within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). The registered agent for HSB is Corporation Service Company, 101 South Spring Street, Suite 220 Little Rock, AR 72201.

9. The Plaintiffs and those similarly situated seek an action for declaratory judgment under 28 U.S.C. § 2201 and 2202 and for compensation and other relief under the Fair Labor Standards Act, as amended.

10. Jurisdiction of this action is conferred on the Court by 29 U.S.C. §§ 216(b) and 217; 28 U.S.C. §§ 1331 and 1337. Venue lies within this district, pursuant to 28 U.S.C. § 1391.

11. At all times material herein, the Plaintiffs and those similarly situated have been entitled to the rights, protection and benefits provided under the Fair Labor Standards Act, as amended. 29 U.S.C. § 201, *et seq* (hereafter referred to as "FLSA").

12. The named Plaintiffs also bring this action for breach of contract solely on behalf of themselves as individuals. This court has supplemental jurisdiction over Plaintiff's breach of contract claims.

FACTUAL ALLEGATIONS

13. HSB is a third-party administrator ("TPA"). It is a claims administration and health management firm providing administrative and other support services to self-funded employers. HSB is headquartered in Little Rock, Arkansas and also has offices in Nashville, Tennessee and St. Louis, Missouri. HSB presently has about 250 employees.

14. HSB presently employs the Plaintiffs and approximately 35 to 40 other individuals as claims processors. Many, but not all of the processors have been with HSB since its inception in about 2001. HSB previously employed other individuals (who have now left HSB) as claims processors.

15. The claims processors provide healthcare claims processing services. Each claims processor performs the vast majority of her processing for HSB from the claims processor's home.

16. Most of the claims processors are supervised by and report to the HSB headquarters in Little Rock. A smaller number of claims processors are supervised by and report to the HSB Nashville office.

17. Upon becoming employed as a claims processor, each claims processor was required to sign an Employment Agreement similar in form to the one attached hereto as Exhibit "A" and incorporated herein by reference. Among other things, the Employment Agreement provides that the claims processor is not to work "in excess of forty (40) hours in a workweek without getting advanced approval from" HSB.

18. Each claims processor was/is paid pursuant to a piece rate arrangement, whereby she is compensated based on the number of claims she processes in a particular workweek. She also receives a per piece rate for each "fix-it" she processes. A "fix-it" is a claim that requires additional information be entered in the claims system in order to complete processing.

4

19. HSB's expressed restriction on claims processors' working overtime notwithstanding (See ¶ 17, *supra* and Exhibit "A"), claims processors regularly worked in excess of forty (40) hours in a workweek. HSB was aware, or should have been aware that claims processors regularly worked in excess of forty hours in a workweek. HSB supervisors approved and encouraged claims processors to work in excess of forty (40) hours per workweek.

20. Claims processors were required to maintain and turn in records of their hours worked. However, HSB instructed claims processors to record a maximum of 40 hours per week on such records, irrespective of how many hours the claims processors actually spent in processing claims.

21. Each claims processor was required as part of her job to travel from her home to HSB's office in order to, among other things, receive claims for processing. Claims processors received no compensation for their travel time to and from HSB's office.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF FLSA

22.    Plaintiffs hereby incorporate all previous allegations of this Complaint as if fully set forth herein.

23.    The named Plaintiffs bring this action under 29 U.S.C. § 216(b) as a representative action on behalf of themselves and all persons similarly situated. Plaintiffs allege that these FLSA violations resulted from Defendant's policies and practices regarding payment of all Defendant's claims processors.

24.    Pursuant to 29 U.S.C. § 216(b), Plaintiffs bring this FLSA claim as a collective action on behalf of all workers employed by Defendants to perform claims processing.

25.    Defendants failed to pay the named Plaintiffs and similarly situated workers overtime for hours worked in excess of forty (40) hours in a workweek in which they performed work, in violation of 29 U.S.C. §§ 201 *et seq*.

26. HSB's violation of the rights of Plaintiffs and others similarly situated were willful.

27. As a consequence of HSB's violations of their rights under the FLSA, Plaintiffs and other similarly situated are entitled to their unpaid compensation, plus an additional equal amount in liquidated damages and costs of court, pursuant to 29 U.S.C. § 216(b).

### COUNT II: BREACH OF CONTRACT

28. Plaintiffs hereby incorporate all previous allegations of this Complaint as if fully set forth herein.

29. The contract between HSB and each of the named Plaintiffs requires HSB to pay claims processors one and one-half times the contract piece rate for each claim processed during hours worked in excess of forty (40) in any workweek.

30. Throughout their HSB employment, named Plaintiffs regularly processed claims during hours worked in excess of forty (40) in a workweek.

31. HSB failed to pay claims processors one and one-half times the contract piece rate for each claim processed during hours worked in excess of forty (40) in any workweek.

32. In addition to other compensation already paid to named Plaintiffs, named Plaintiffs are entitled to one-half the contract piece rate for all claims processed during work hours in excess of forty in any workweek.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant them the following relief:

    a. Enter a declaratory judgment, declaring that the Defendant has willfully and wrongfully violated its statutory obligations under FLSA and deprived the

       Plaintiffs and those similarly situated of their rights, protection, and entitlements under law as alleged in Plaintiffs' complaint;

b.    Enter a permanent injunction, restraining and preventing the Defendant from withholding the compensation that is due each of the Plaintiffs and those similarly situated and from further violating their rights under the law;

c.    Enter judgment in favor of the named Plaintiffs and similarly situated workers who opt-in to this FLSA collective action and award them their unpaid overtime compensation and an equal amount in liquidated damages;

d.    Award the named Plaintiffs their damages for breach of contract;

e.    Award Plaintiffs prejudgment and post judgment interest as allowed by law;

f.    Award Plaintiffs their reasonable expenses, costs of court, and attorney's fees; and

g.    Award Plaintiffs such other relief as this Court deems just and proper under the circumstances.

Respectfully submitted,

Hosto & Buchan, P.L.L.C.
701 West 7th Street

Respectfully submitted,

HOSTO & BUCHAN, P.L.L.C.
701 West 7th Street
Little Rock, AR  72201
(501) 374-1300
(501) 244-9710 (fax)

By: _____
Sam P. Strange Jr.
Ark. Bar No. 90012
sstrange@hosto.com

and

MARK ALAN PEOPLES, PLC
P.O. Box 25323
Little Rock, AR  72221-5323
(501) 217-9696
(501) 221-0633 (fax)

By: _____
Mark Alan Peoples
Ark. Bar No. 90005
markpeoples@comcast.net

**8**

## EMPLOYMENT AGREEMENT FOR
## FULL-TIME
## HOME CLAIMS PROCESSING

This Agreement is made and entered into as of the _____ day of _____, 20___, ("Effective Date") between HealthSCOPE Benefits, Inc. ("Employer"), and _____, ("Employee") whose home address is _____.

1. **PURPOSE.** Employee is employed by Employer to provide healthcare claims processing services ("Services") which, except as otherwise provided herein, will be performed in the Employee's home. Except as otherwise provided in this Agreement, Employee will have all rights, duties and obligations of any other employee of Employer.

2. **PRICING.** In addition to reimbursement of necessary, approved and documented business-related expenses, Employer shall pay Employee in accordance with Exhibit A, which may be modified by Employer in its sole discretion at any time.

"Processed Claim" means a claim that is paid or denied; "Processed Claim" does not include a claim pended awaiting information. Employer in its sole discretion shall determine the acceptable level of pended claims.

For FIX-IT claims, "Fix-It" means a claim that requires additional information be entered in the claims system in order to complete processing.

Employee's wages will be based on the Employer's weekly calculation of Processed Claims. Employee will be paid in bi-weekly installments according to the administrative convenience of Employer.

Employee agrees that, except as provided in Paragraph 7 below, the fees paid for Processed Claims compensates Employee for all hours worked, both productive and nonproductive (e.g. set-up, travel, in-office time, etc.).

No additional charges or fees shall be submitted by Employee to Employer, except as may be otherwise provided for in this Agreement or agreed to by the parties and included as an amendment to this Agreement.

3. **OVERTIME.** Employee may not work in excess of forty (40) hours in a workweek without getting advanced approval from Employer. In the event Employee is authorized by Employer to work in excess of forty (40) hours in a work week, Employee will be paid at the rate of one and one half (1 1/2) times the piece rate being paid pursuant to Exhibit A as of the end of that work week.

4. **HOMEWORKER HANDBOOK.** Employee will accurately record all hours worked, work performed and business-related expenses in the Homeworker Handbook of the U.S. Department of Labor supplied by Employer and will submit with his/her claims production sheet the Homeworker Handbook to Employer at the end of each pay period for collection of information recorded by the Employee. When the Homeworker Handbook has no space remaining for additional entries, or upon termination of Employee's employment, Employee will return the Homeworker Handbook to Employer.

5. **MINIMUM PRODUCTION.** In order to be a full-time Home Claims Processor, Employee must meet a minimum standard for claims production during the workweek. Failure by Employee to meet the minimum standard of claims processed per week as set by Employer gives Employer discretion to reduce Employee's status to part-time or terminate the Employee's status as a Home Claims Processor. Such reduction or termination shall be at the discretion of Employer, based upon the needs of Employer. In addition, Employer may change the minimum claims production standard at any time and in Employer's sole discretion.

**EXHIBIT A**
*Harriott, et. al. v. HSB*

6. **QUALITY PRODUCTION.** In order to be a Home Claims Processor, Employee must meet the following <u>minimum</u> standards for the quality and timeliness of claims processed:

> 99% Financial Accuracy
> 95% Payment Incidence
> 95% Coding Accuracy

In order for Employer to meet the claims turn around time expectations of its customers, Employee must notify his/her immediate supervisor as soon as the Employee believes he/she may not meet the minimum timeliness standards set out above.

Employee's performance will be reviewed each month based on a percent stratified audit conducted by Employer. Employee will be entitled to a bonus and/or subject to a penalty according to Employer policy then in effect and published to Employee.

7. **REPORTING TO OFFICE/SCHEDULED TELECONFERENCES.** Employee may from time to time be required to report to Employer's office for reasons other than to pick up and return claims, for example, to work in the event of absences of other employees or to attend a necessary meeting, or Employee may be required to participate in a scheduled teleconference with his/her supervisor for training. In these events and only in these events, Employee will be paid at the rate of $12.60 per hour for each hour spent in the office or teleconference. Employee will come to the office in appropriate dress in these circumstances. While Employee's pay for the work performed at the office will be based strictly at the stated hourly rate, the number of claims processed by Employee while in the office will be included in the total number of Processed Claims for the same week solely for the purpose of determining the fee to be paid under <u>Exhibit A</u> for Processed Claims processed by Employee while at home during the remainder of that same week.

8. **VOICE MAIL.** Employee agrees to provide, at Employee's expense, a message center (e.g. voice mail or answering machine) when the Employee is not available to answer the telephone. Employee agrees to check messages at least four (4) times each business day, unless Employee has notified his/her immediate supervisor in advance that Employee will not be working that day. If Employee's message center is not in working order, Employee must report it to his/her immediate supervisor immediately and make diligent efforts to fix the problem at Employee's own expenses and in a timely manner.

9. **EMAIL.** Employer will supply the Employee with email access. Employee agrees to check his/her email at a minimum of four (4) times per day and reply accordingly. If Employee's email is not in working order, Employee must report it to his/her immediate supervisor immediately.

10. **ADVANCED NOTICE OF INTENT NOT TO PROCESS CLAIMS.** In order for Employer to meet the claims turn around time expectations of its customers, Employee must notify his/her immediate supervisor as soon as Employee knows he/she will not be processing any claims for two (2) or more consecutive business days. If Employee knows he/she will not be processing claims for more than three (3) consecutive business days, Employee must give his/her immediate supervisor at least ten (10) calendar day's prior notice. Employee's immediate supervisor may deny Employee's request for permission not to process claims for a period of time in excess of two (2) consecutive business days if necessary to address the Employer's business needs.

11. **ORGANIZATIONAL GUIDELINES.** Employee agrees to comply with the organizational guidelines of the business unit to which Employee reports within Employer.

12. **BENEFITS.** Employee will be eligible for participation in the following employment benefits offered by Employer according to the terms and conditions of each benefit plan or program: (1) medical health plan, (2) prescription drug plan, (3) dental plan, (4) retirement savings plan, (5) flexible spending account plan, and (6) employee assistance program. While Employer offers other employment benefits to other employees, for example, life insurance, disability insurance, paid time off, etc., because Employee enjoys benefits from working from home that other employees do not enjoy, such as flexible working

contracts.homeproc.level3v8.con 1.03

Page 2

hours, no dress code, and minimal customer telephone calls, Employee acknowledges s/he is not eligible to participate in such other benefit plans and programs. The cost to Employee to obtain coverage under the benefit plans in which s/he chooses to participate are set by Employer which reserves the right to change any aspect of the benefit plans as permitted by law, including, but not limited to, the level of Employee's contributions.

13. **CONFIDENTIALITY.** This Agreement is in all respects confidential, and neither party shall disclose any of its terms to anyone outside the Employer or Employee without the express written consent of Employer and Employee. Employee further agrees to keep confidential the confidential and proprietary information of Employer and the confidential information of its customers and the participants in their benefit plans pursuant to applicable law, including, but not limited to, the Health Insurance Portability and Accountability Act of 1996 (HIPAA).

14. **EQUIPMENT.** Employee will be responsible for installing and maintaining in Employee's name a dedicated telephone line and Employer will reimburse Employee for those paid expenses one time for the initial installation following the effective date of this Agreement. Installation charges after the first installation will be Employee's responsibility. Employer will provide a computer terminal, modem, and other equipment necessary for Employee to provide the Services. Equipment provided to Employee is the sole property of the Employer. The Employee agrees to use the equipment for business use only and agrees that Employer may inspect equipment at any time. At the request of Employer, Employee will return the equipment to Employer.

| EQUIPMENT DESCRIPTION | SERIAL NUMBER/OTHER IDENTIFIER |
|---|---|
| Computer Terminal | |
| Modem | |
| Calculator | |
| Other (Describe) | |
| Other (Describe) | |
| Other (Describe) | |
| Other (Describe) | |

15. **EMPLOYEE HANDBOOK.** Employer will provide an Employee Handbook to Employee and its terms are incorporated into this Agreement; in the event of any conflict between the terms of the Employee Handbook and this Agreement, this Agreement will control.

16. **TERMINATION.** Either party may terminate this Agreement, and thereby Employee's employment with Employer, immediately and at-will in accordance with applicable law, and this Agreement shall not act, nor be construed to act, as a guarantee of continued employment. In the event Employee decides to terminate employment with Employer, Employer requests two weeks advanced notice.

17. **ORDERLY DISENGAGEMENT.** Upon termination of the Employee's employment with Employer, each party shall immediately return to the other all papers, equipment, materials, and other property of the other held by each for purposes of performance of this Agreement. Each party shall assist the other in the orderly termination of this Agreement as may be necessary for the smooth and orderly business continuation.

18. **GOVERNING LAW.** This Agreement shall be construed under and governed by the laws of the State of Arkansas, applicable to contracts entirely made and performed therein.

19. **ENTIRE AGREEMENT.** This Agreement constitutes the entire Agreement between the parties with respect to the subject matter hereof. All prior agreements, representations, statements, negotiations, and undertakings are superseded by this Agreement.

**HealthSCOPE Benefits, INC.**                                   **EMPLOYEE**

By: _____
Title: _____
Date: _____

Name (Print): _____
Date: _____